Dan Livermore ("the husband"), a resident of California, appeals from the trial court's judgment divorcing him from Cindy Livermore ("the wife"). The husband argues that the trial court did not have jurisdiction over the marital res because, he says, the wife did not meet the six-month residency requirement of Ala. Code 1975, § 30-2-5; he also argues that the trial court erred in determining that it had personal jurisdiction over him. The husband further argues that the trial court erred in denying his motion to vacate the divorce judgment because, he alleges, the settlement agreement upon which the judgment was based was procured through fraud, misrepresentation, and mistake of material fact.
The wife and the husband were married on December 14, 1986. They were both residents of the State of California until August 1998, when the wife moved with the parties' two minor children to the wife's parents' home in Wilmer, Alabama. The children attended a Mobile County public school during the 1998-1999 school year, during which the husband maintained telephone contact with them and forwarded the wife approximately $2,100 to help support them. In early June 1999, the parties agreed that the children would return to California for the summer.
A short time after moving to Alabama, the wife filed a complaint for divorce in Mobile County. However, while the children were in California during the summer of 1999, the husband filed a motion requesting that the trial court decline jurisdiction. Following an August 16, 1999, hearing on that motion, which the husband attended, the trial court dismissed the wife's complaint. The proceedings from this first divorce case are not contained in the record on appeal in this case. However, based upon the submissions of the parties in the present case, it appears undisputed that at the time the wife filed her first complaint, she had not yet met the six-month residency requirement of Ala. Code 1975, § 30-2-5.
On the same day, August 16, 1999, that her first divorce complaint was dismissed, *Page 439 
the wife filed a second divorce complaint in the trial court, alleging that she had been a bona fide resident of Alabama for more than six months and requesting a divorce on the grounds of incompatibility and an irretrievable breakdown of the marriage. Service of the second complaint was made on the husband in Mobile County on the afternoon of August 16 as he was preparing to board a plane to return to California after attending the hearing at which the wife's first divorce complaint was dismissed. Two days later, the husband filed a motion in California for immediate custody of the children, alleging that the wife had berated their older child and had abused both children on a weekly basis.
According to testimony of the wife, the husband informed her on August 23, 1999, that he had enrolled the children in school in California and that he would not return them to Alabama. In response, the wife filed a motion in the trial court requesting that the court immediately order the husband to return the children. On August 26, 1999, the trial court held a hearing on the wife's motion; neither the husband nor his counsel were present at the hearing. At the hearing, the wife denied the husband's allegations regarding abuse. The wife testified that the children had lived with her and had attended school in Alabama from August 1998 through the first few days of June 1999, when she had allowed them to go to California for the summer. The wife stated that the husband had refused to honor the parties' agreement that the children would be returned to Alabama on August 23, 1999, so that they could attend school.
The wife also testified at the August 26, 1999, hearing that approximately two months before filing the second divorce complaint, she had moved to Lucedale, Mississippi; it was undisputed that the wife leased a house in Lucedale. The wife stated that a few days before she filed her second complaint, however, she moved back to Alabama and rented a mobile home in Fairview.[1] In support of her testimony, the wife offered the first page of a lease for property located in Wilmer, Alabama, which is near Fairview. The page identified the lease's effective date as September 1, 1999.
On August 31, 1999, the husband filed a "Motion to Decline Jurisdiction," alleging that the wife had not been a resident of Alabama for the six months immediately preceding the filing of her second complaint for divorce. He also alleged that the wife had fraudulently taken the children from California in August 1998 and that the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Protection Act required that custody be litigated in California because, he said, Alabama was not the children's "home state."
The trial court held a hearing on the husband's "Motion to Decline Jurisdiction" on September 2, 1999. At the hearing, the children's guardian ad litem testified that a few days before the August 16, 1999, hearing on the wife's first divorce complaint, he had visited the wife at her home in Lucedale, Mississippi. According to the guardian ad litem, the wife informed him that she planned for the children to attend school in Mississippi. He also testified that the wife stated that she had been living with her parents in Wilmer, Alabama, and had attempted to save money so that she could obtain her own home. The guardian ad litem stated that the wife advised him that she had lived in Lucedale *Page 440 
for approximately one and one-half months and that she intended to reside in Lucedale while the children attended school. The guardian ad litem was not aware that the wife had subsequently signed a lease for a mobile home in Fairview, Alabama.
On September 14, 1999, the trial court denied the husband's "Motion to Decline Jurisdiction." In response, the husband filed a "Motion to Reconsider and Amend," alleging that the trial court's ruling was against the great weight of the evidence and was contrary to federal and state law, and that the ruling should be vacated. This latter motion was not set for a separate hearing.
The trial court set the wife's divorce complaint for trial on December 30, 1999. At the trial, the parties purportedly reached a settlement agreement regarding the terms of the divorce and the custody of their children. The parties submitted the case for entry of a judgment on the pleadings and testimony. As a prelude to reading the settlement agreement into the record, the wife answered in the affirmative when asked if she had been a resident of Alabama for six months before she filed her second complaint. She also testified that attempts to reconcile her with the husband would be futile and not in the best interests of their children. After the wife's testimony, the settlement agreement was read into the record, and both parties confirmed that the stated terms represented their agreement. Following that affirmation, the husband requested that the trial court rule upon his pending motion asserting jurisdictional issues; the trial court denied the motion.
On March 17, 2000, the trial court entered a "Judgment of Divorce," which purported to be consistent with the terms of the parties' settlement agreement. The judgment granted the parties a divorce, provided for joint custody of their children, allocated child-support obligations, and addressed various other matters. On April 6, 2000, the husband filed, pursuant to Rule 59, Ala.R.Civ.P., a motion to vacate or to amend the divorce judgment, alleging that the parties had agreed that child support would be calculated according to Rule 32 of the Alabama Rules of Judicial Administration and that the judgment did not accurately reflect their agreement relating to child support. Before the expiration of the 90-day period set forth in Rule 59.1, Ala.R.Civ.P., the parties agreed that the husband's Rule 59 motion could be ruled on after the expiration of that period.
On June 15, 2000, the trial court entered an order setting all pending motions for hearing on August 4, 2000. On July 12, 2000, the husband filed an amendment to his Rule 59 motion, alleging that the wife had obtained the parties' settlement agreement through fraud and misrepresentation and that the husband had agreed to the settlement terms as a result of a mistake of material fact. The husband's amendment also alleged that the provisions of the judgment were not in the best interests of the parties' children.
The trial court held a hearing on the husband's motion to vacate or amend, as well as the amendment to that motion, on August 30, 2000. At the beginning of the hearing, the trial court noted that its March 17, 2000, judgment had not reflected accurately the terms of the parties' settlement agreement because of a clerical error. The trial court stated that it would amend the judgment nunc pro tunc to accurately reflect the terms of the parties' settlement agreement. The parties then presented evidence regarding the husband's motion to vacate or amend, as amended, along with additional testimony regarding whether the court had subject-matter and personal jurisdiction. *Page 441 
As to the jurisdictional matters, at the postjudgment hearing the husband testified that he had never resided in Alabama and that he had not consented for his children to reside in Alabama, although he admitted that the children had lived with the wife in Alabama from August 1998 until June 1999 and had attended school in Alabama during the 1998-1999 school year. The husband also stated that he had no business or other professional contacts in Alabama and that he and the wife had vacationed in Alabama for approximately three weeks during their 14-year marriage.
Following the husband's testimony, the guardian ad litem testified that his visit with the wife in August 1999 led him to believe that the wife was residing in Mississippi. He further testified that it was his impression that the wife had decided to live in Lucedale, Mississippi, at least for several months, and that she would be sending her children to school in Mississippi. He could not recall whether the wife had made a direct representation regarding her intent to continue to reside in Mississippi.
The wife testified at the postjudgment hearing that she had been living in Lucedale, Mississippi, when she met with the guardian ad litem in August 1999, and that, at that time, she had intended to place the children in school in Mississippi. However, the wife testified that she had returned to Wilmer, Alabama, a few days before filing her second complaint for divorce and had provided a copy of her Alabama lease to the court "[b]ecause I had to get moved back to Alabama to be a resident."
On September 26, 2000, the trial court entered an order amending the judgment in certain respects; however, the amended judgment denied, in pertinent part, the husband's amended motion to vacate or amend. The amended judgment also specifically denied relief from the court's earlier ruling on the husband's jurisdictional issues. On October 26, 2000, within 30 days of its amended judgment and after considering briefs filed by the parties, the trial court entered an order again amending its judgment "ex mero motu." The order stated that it was intended to amend the court's amended judgment of September 26, 2000, so that the judgment would conform to the parties' December 30, 1999, settlement agreement. The order also purported to again deny the husband's "Motion to Decline Jurisdiction" and the trial court reaffirmed its earlier orders, except as specifically amended.
On appeal, the husband first argues that the trial court erred in denying his "Motion to Decline Jurisdiction" because, he alleges, the wife did not satisfy the residency requirement of Ala. Code 1975, §30-2-5. That statute provides:
 "When the defendant is a nonresident, the other party to the marriage must have been a bona fide resident of this state for six months next before the filing of the complaint, which must be alleged in the complaint and proved."
"Our courts have no jurisdiction over the marital res where the residence requirement is not met." Chavis v. Chavis, 394 So.2d 54, 55
(Ala.Civ.App. 1981). When the trial court hears oral testimony regarding residence under § 30-2-5, "the judgment of the court is presumed correct and will not be set aside on appeal unless so contrary to the great weight of the evidence as to be palpably wrong." Id.; see alsoAndrews v. Andrews, 697 So.2d 54 (Ala.Civ.App. 1997); Seymour v.Seymour, 597 So.2d 1368 (Ala.Civ.App. 1992). However, no presumption of correctness applies "when the trial court has misapplied the law to its findings of fact." Andrews, 697 So.2d at 56. *Page 442 
"Residence, for purposes of § 30-2-5, is the same thing as domicile." Chavis, 394 So.2d at 55; see Yates v. Yates, 607 So.2d 207
(Ala.Civ.App. 1991). As has been noted before, domicile is an abstract concept. See, e.g., Rabren v. Mudd, 285 Ala. 531, 535, 234 So.2d 549,553 (1970). Alabama decisions hold that domicile requires two elements: (1) one's physical presence in the chosen place of residence, and (2) an accompanying intent to remain there, either permanently or for an indefinite length of time. Id.; Basiouny v. Basiouny, 445 So.2d 916, 919
(Ala.Civ.App. 1984). It has been said that "domicile" is that place to which, whenever one is absent, he or she has an intent to return. Stateex rel. Rabren v. Baxter, 46 Ala. App. 134, 138, 239 So.2d 206, 209
(Civ.App. 1970). When a party physically resides in one location, "`[t]he intention to return [to another location] is usually of controlling importance in the determination of the whole question [of domicile].'"Andrews v. Andrews, 697 So.2d 54, 56 (Ala.Civ.App. 1997) (quoting Jacobsv. Ryals, 401 So.2d 776, 778 (Ala. 1981)).
Furthermore, the burden is on the party who lives at a particular place to prove that he or she does not intend to remain there for an indefinite length of time, or that he or she has a present intention to return to some previous place of residence. In this regard, our Supreme Court has stated that "`[t]he fact that a person lives at a particular place creates a prima facie presumption that such place is his domicile.'"Andrews, 697 So.2d at 56 (quoting Nora v. Nora, 494 So.2d 16, 18 (Ala. 1986)); see also 25 Am. Jur.2d Domicil § 56 (1996) (proof that a party resides elsewhere rebuts any presumption of continued domicile and places burden of proof upon the party denying the charge).
In this case, the wife failed to present substantial evidence to rebut the prima facie presumption that, at the time she moved to Lucedale, Mississippi, that place became her domicile. In the face of this presumption, bolstered as it was by testimony suggesting that the wife moved to Mississippi for an indefinite period of time, the wife gave testimony that repeatedly stopped just short of addressing her intentions at the time of her move and, therefore, did not amount to substantial evidence to rebut the presumption that Mississippi was her new domicile.[2]
When asked why she moved to Lucedale, Mississippi, the wife responded in a manner indicating an intention to remain in Mississippi indefinitely:
 "Q. Okay. Tell Judge Banks why you moved over to Lucedale[, Mississippi].
 "A. Well, [the father] wasn't really paying me that much in child support and the rent was [$225] a month, so I thought I could move out of my Mom's and afford to make it over there with [the children] because it's really hard living with another family when you've got kids."
As previously indicated, the guardian ad litem testified that the wife told him that, *Page 443 
upon moving to Mississippi, she planned to enroll the children in school there:
 "Q. . . . First of all, didn't Mrs. Livermore tell you that the children were going to go to school in Lucedale, Mississippi?
"A. Yes.
 "Q. Did she tell you what school in Lucedale, Mississippi, they were going to go to?
 "A. Yes. The two children would not go to the same school and it would be because of their ages, as I recall but — and I forget the name of the institutions, but they were going to be Mississippi institutions.
 "Q. Did she tell you where she intended to reside while her children went to school in Lucedale, Mississippi?
 "A. She was going to reside in the house that she was presently in, which was located in Lucedale, Mississippi, on a street called Lee Havard Road.
". . . .
 "Q. What if anything did Mrs. Livermore tell you about when she had moved to Mississippi?
 "A. My recollection is that she had recently signed a lease for that house and that she had been there approximately a month and a half."
When asked about the guardian ad litem's visit to her house in Mississippi, the wife testified:
 "Q. Did you hear [the guardian ad litem's] testimony about him visiting you in your home in Lucedale, Mississippi, approximately a week or 10 days prior to August 16, 1999?
"A. Yes.
 "Q. Okay. Were you living in Lucedale, Mississippi, when he came to visit you in Lucedale, Mississippi, at that time?
"A. Yes.
 "Q. Did you tell [the guardian ad litem] that it was your intention to place your children in school in Lucedale, Mississippi?
"A. At that time I thought I was."
As to whether the wife had intended to return to Alabama upon moving to Mississippi, or whether she merely made a decision to return to Alabama in August 1999 in order to bolster her contention that an Alabama court had subject-matter jurisdiction, her testimony is not helpful to her position. In reference to her decision to move back to Alabama just before August 16, 1999, i.e., the date of the hearing regarding the dismissal of her first complaint and the date of the filing of her second complaint, the wife testified:
 "A. . . . I had moved in to Wilmer and even brought the documents for the judge to see, a new residence. Because I had to get moved back to Alabama to be a resident.
 "Q. So you had to move back to Alabama from Mississippi so that you could file this lawsuit; is that what you were told?
 "A. I had to be a resident of Alabama and I had to move back over here.
 "Q. But — so at the time you were living in Lucedale, Mississippi —
"A. Yeah, I had lived there for, I think, two months.
 "Q. And you weren't a resident of Alabama. You were a resident of Mississippi, right?
 "A. I had lived in Alabama for almost a year, then we moved over there for a couple of months, and then moved back.
 "Q. But the question is, at the time you lived in Lucedale, Mississippi, you *Page 444 
were not a resident of Alabama, correct?
"A. Apparently not."
Finally, when given the opportunity to expressly address the issue of her intent, the wife failed to do so. The foregoing colloquy continued:
 "Q. Well, it was your intention to be a resident of Mississippi at that time, right?
"A. I'm not really sure."
In light of the foregoing, our review of the record does not reveal substantial evidence that the wife did not intend to remain in Mississippi indefinitely. Accordingly, the trial court's conclusion that it had subject-matter jurisdiction is not supported by the evidence.
Because we conclude that the trial court lacked subject- matter jurisdiction over the marital res, a discussion of the remaining issues raised by the husband on appeal is unnecessary. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] The wife subsequently testified that Lucedale, Mississippi, is approximately a 20-minute drive from Fairview, Alabama.
[2] The wife did testify that she did not have an intent to live in Mississippi "permanently." The intent necessary to establish domicile, however, is an intent to remain in one's new place of residence "either
permanently or for an indefinite period of time." Rabren, 285 Ala. At 535, 234 So.2d at 553 (emphasis added). In the face of evidence suggesting that the wife planned to stay in Mississippi indefinitely, she presented no evidence that she did not plan to do so. Nor, despite being given the opportunity to do so, did the wife ever testify that, at the time she moved to Mississippi, she had the intention to do so only on a temporary basis or that she had an intention to return to Alabama.